IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.1:15 CR 194 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA GAUGHAN |
| | ) | |
| -vs- | ) | |
| | ) | |
| GREGORY INGRAM, | ) | DEFENDANT'S SENTENCING |
| | ) | MEMORANDUM |
| Defendant. | ) | |
| | ) | |

Now comes defendant, Gregory Ingram, by and through his undersigned attorney, and respectfully presents this Court with a Sentencing Memorandum on behalf of the defendant.  As the final presentence report prepared by Pretrial Services does present a complete background of the defendant and his action for this Court's consideration, this document will be brief. However, attached to this document is a letter from Ingram's counselor to confirm his attending counseling and therapy with a licensed psychiatrist.  The letter provides this Court a summary of the doctor's diagnosis of Ingram's mental health issues for this Court's consideration.

Ingram entered a guilty plea without a written plea agreement.  It is requested here that whatever sentence this Court deems appropriate, that the sentence allows Ingram to remain in counseling or resume counseling as soon as is feasible.  Such a sentence would be consistent with the dictates of §3553(A).

These issues will be addressed more fully in the attached Memorandum in Support.

Respectfully submitted,


 S/David L. Doughten
DAVID L. DOUGHTEN (#0002847)
4403 St. Clair Avenue
Cleveland, OH 44103
(216) 361-1112
Fax: (216) 881-3928
Email: ddoughten@yahoo.com



**CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of October, 2015, a copy of the foregoing was filed

electronically.  Parties may access this filing through the Court's system.  Notice of this filing

will be sent by operation of the Court's electronic filing system


 S/ David L. Doughten
David L. Doughten
4403 St. Clair Ave.

Attorney for Defendant

## MEMORANDUM IN SUPPORT

The defendant, Gregory Ingram, was a licensed medical doctor in the state of Ohio. However, due to his own poor choices, he has already entered a guilty plea to the indictment in this case and voluntarily relinquished his medical license. What he worked so hard to earn, he has forfeited by his own actions.

The actions of the players in this story would easily form the basis for a bad Lifetime Channel movie. Ingram was going through a divorce. He sought release from his depression from strip clubs. The dancers at the club were only too happy to accommodate him in his pursuit; but at a price. Ingram willingly complied, providing prescription drugs as requested. But of course, the demands from the dancers and their friends grew greater. Ingram was trapped. Not only was he now improperly providing prescription drugs for the women directly, but the requests were now being made by the women for their friends.

Eventually Ingram recognized he was in too deep. Hard as it was and is for him to accept, he had become the equivalent of a drug dealer. He could not accept that this is what he had become. When the reality finally sunk in, he contacted an attorney and decided to come clean. His previous attorney contacted the medical board to report the misconduct. Ingram went to law enforcement.

**Treatment and Therapy**

Dr. Shishuka Malhotra, MD, has been counseling Ingram on a regular basis since December 15, 2014. Dr. Malhotra has diagnosed Ingram as suffering from Bipolar Disorder and Passive Dependant Traits. Dr. Malhotra believed that the illness began in his late teenage years. Since that time he has been compensating for his symptoms by supporting a co-dependency with

1

his then wife, also a doctor.  The depression began after the divorce in 2012. It was believed this, the Bipolar Disorder and depression, negatively effected his ability to make sound decisions.  *See* attached Exhibit, letter from Dr. Malhotra.

Importantly, the diagnosis included a belief that with the "continuation of treatment and therapy he would be able to rehabilitate."  It was noted that Ingram has been compliant in taking his medication (Wellbutrin XR Saphris) and psychotherapy.

Guidelines Considerations

It is well-setted that the USSG are not binding on this Court.  In United States v. Booker, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), the Supreme Court invalidated the mandatory use of the Sentencing Guidelines and declared them "effectively advisory."  The Sixth Circuit has stated that "once the appropriate advisory Guideline range is calculated, the district court throws this ingredient into the section 3553(a) mix." United States v. McBride, 434 F.3d 470 (6th Cir. 2006).

The §3553(a) factors include the nature and circumstances of the offense and history and characteristics of the defendant, the need for the sentence imposed, the kinds of sentences available, the kinds of sentence and sentencing range established for the defendant, pertinent policy statements, the need to avoid unwarranted sentencing disparities among similarly situated defendants, and the need to provide restitution. 18 U.S.C. § 3553(a)(1)-(7) Although Booker, held that the Sentencing Guidelines are not mandatory, sentencing courts must determine whether a specific element of the Sentencing Guidelines applies because a district court must still consider the Guidelines when imposing "a sentence sufficient, but not greater than necessary, to

comply with the purposes" of section 3553(a).  18 U.S.C. § 3553(a);  See United States v. Webb, 403 F.3d 373, 383-84 (6th Cir. 2005).

A judge sentencing a federal offender must impose at least one of the following sanctions: imprisonment (often followed by supervised release), probation, or a fine. See §3551(b). In determining the appropriate sentence from among these options, §3553(a)(2) requires the judge to consider specified factors, including:

"the need for the sentence imposed --

A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

B)    to afford adequate deterrence to criminal conduct;

C)    to protect the public from further crimes of the defendant; and

D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

These four considerations -- retribution, deterrence, incapacitation, and rehabilitation -- are the four purposes of sentencing generally, and a court must fashion a sentence "to achieve the purposes . . . to the extent that they are applicable" in a given case. § 3551(a).

Tapia v. United States, 131 S.Ct. 2382 (2011).

**Summary**

In considering the above guidelines here, it is clear that the need to protect the public is minimal.  The circumstances in this case are unlikely to reoccur as Ingram has turned in his medical license.  He is also receiving treatment for his mental health issues.  As noted in Dr. Malhotra's letter, Ingram is "very ashamed and guilty for his past actions."  It is understood that his actions here are serious and deserving of some form of incarceration.

3

Nevertheless, it is argued here that a sentence in Zone C of the guidelines would be appropriate as he would serve to a terrm of incarceration, yet be able to continue his treatment without too great of a break.  Ingram has shown every sign of remorse and taken positive steps in rehabilitating his life with the full support of his family and friends.

Respectfully submitted,


 S/ David L. Doughten
David L. Doughten

Counsel for Defendant

4



**Shishuka Malhotra, MD, President & Medical Director**

4825 Higbee Avenue, NW, Suite 102
Canton, OH 44718
Phone: 330-493-1118/Fax: 330-493-1154
E-mail: Website: *www.nb-cr.com*

Nov, 2, 2015

To Judge Patricia Gaughn at the United States District Court:

Dear Madam,

  Dr. Greg Ingram has been my patient since December, 15, 2014. He suffers from Bipolar Disorder and Passive Dependent Traits. I suspect his illness started in his late teenage years. Since then, he has been compensating for his symptoms by supporting a codependency with his wife. Following his divorce (2012), the patient became very depressed; consequently, his ability to make sound decisions was negatively affected, further. This resulted in continued engagement with strippers, at strip clubs, and writing prescriptions for controlled substances in exchange for their "services".

  He suffers from Bipolar Disorder prior to all the events which led to him losing his license to practice medicine. He has mentored and his personality is very straightforward, he's hard working and a law abiding caring physician. He has been compliant with medication (Wellbutrin XR Saphris) and psychotherapy. He is very ashamed and guilty for his past actions. He continues to work hard in psychotherapy and sex addiction groups.

  I am confident   with continuation of treatment and therapy he would be able to rehabilitate. Then one day function as a kind and caring physician he once was.

Sincerely,

*Shishuka*

Shishuka Malhotra, MD
President & Medical Director